IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL D. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19CV417 |
| | ) | |
| NORTH CAROLINA DEPARTMENT | ) | |
| OF PUBLIC SAFETY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants North Carolina Department of Public Safety ("NCDPS"), Eric Hooks ("Secretary Hooks"), and Wendell Jackson's ("Mr. Jackson") ("Moving Defendants"), motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 14.) Plaintiff filed an opposition brief and an Amended Complaint in response to Moving Defendants' motion. (Docket Entries 17, 18.) Moving Defendants thereafter filed a reply. (Docket Entry 20.) For the reasons stated herein, the undersigned recommends that Moving Defendants' motion be granted, and this action be dismissed against said individuals.

**I.    BACKGROUND**

In his original complaint, Plaintiff alleges that Defendants violated his rights under the First and Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq. ("RLUIPA"). (Compl. ¶ 1, Docket Entry 2.) Plaintiff also asserts state claims arising under the North Carolina Constitution, Article 1, §§ 13 (Religious

Liberty), 18 (Access to Courts), 19 (Equal Protection/Religious Discrimination), 25 (Right to Jury Trial), and 36 (Other Rights). (*Id.*) Against each Defendant, he declares they were acting under color of state law and sued each in their individual and official capacities. (*Id.* ¶¶ 3-7.)

Plaintiff states that he is a Muslim and a follower of the Nation of Islam ("NOI"). (*Id.* ¶ 9.) He alleges that: (1) he was improperly validated as a member of the Security Risk Group ("SRG") Five Percent Nation of Gods and Earths ("NGE") in 1998; (2) Defendants failed to provide a religious service for the NOI, even though there are services for other religious institutions; and (3) Defendants failed to properly review his SRG status as required by NCDPS policy. (*Id.* ¶¶ 8-21.) He seeks injunctive and declaratory relief.[1] (*Id.* ¶ 21.)

## II. <u>DISCUSSION</u>

Moving Defendants contend that Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Docket Entries 14, 15.) A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to

---

[1] Plaintiff does seek compensatory and punitive damages in his Amended Complaint. (Docket Entry 18.)

relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* at 555 (internal citations omitted). "Rule 12(b)(6) does not countenance . . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).[2]

---

[2] Defendants' motion seeks dismissal under Rule 12(b)(6). (*See* Docket Entry 14.) However, in their support brief, they seeks dismissal under both Rule 12(b)(6) and Rule 12(c). (*See* Docket Entry 15.) Rule 12(c) provides that "[a]fter the pleadings are closed . . . any party may move for judgment on the

3

*Pro se* complaints are to be liberally construed in assessing sufficiency under the Federal Rules of Civil Procedure. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this liberal construction, "generosity is not fantasy," and the Court is not expected to plead a plaintiff's claim for him. *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998).

In the present case, the claims against NCDPS fail to withstand dismissal. To the extent that Plaintiff seeks to impose liability against NCDPS on the basis of § 1983 constitutional violations, NCDPS is entitled to dismissal because NCDPS is not a "person" within the meaning of § 1983. To state a claim under § 1983, Plaintiff must assert "that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). It is well settled law that an agency of the State of North Carolina such as NCDPS is not a "person" as contemplated by § 1983. *Jones v. N. Carolina Dep't of Pub. Safety*, No. 3:17-CV-00256-FDW, 2018 WL 5281728, at *3 (W.D.N.C. Oct. 24, 2018) ("As an arm of the State of North Carolina, Defendant NCDPS is not a 'person' who may be sued for damages under 42 U.S.C. § 1983.") Thus, such claims must fail.

Additionally, Plaintiff's state law claims against NCDPS are barred by Sovereign Immunity. Pursuant to the Eleventh Amendment, sovereign immunity prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the state's Eleventh Amendment immunity. *Ballenger v. Owens*,

---

pleadings." Fed. R. Civ. P. 12(c). Although a motion for judgment on the pleadings pursuant to Rule 12(c) is separate and distinct from a Rule 12(b)(6) motion to dismiss, federal courts apply the same standard in considering both motions. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

352 F.3d 842, 844-45 (4th Cir. 2003). "[U]nder the Eleventh Amendment, a State cannot be sued directly in its own name regardless of the relief sought, absent consent or permissible congressional abrogation." *Id.* (internal quotation omitted). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.,* 195 N.C. App. 485, 492-93, 673 S.E.2d 374, 380-81 (2009). Here, as an agency of the state, NCDPS is entitled to immunity absent waiver of such immunity. No waiver is alleged nor exists here. *Maldonado-Reynolds v. NC Dep't of Pub. Safety,* No. 5:16-CT-03126-D, 2017 WL 1067796, at *1 (E.D.N.C. Jan. 3, 2017) (unpublished) ("Congress has not imposed section 1983 liability upon states, and 'North Carolina has done nothing to waive its immunity.'") (citation omitted); *Harbour v. S.C. Dep't of Corr.*, No. CA 2:12-3611-TMC-BHH, 2013 WL 394159, at *1 (D.S.C. Jan. 16, 2013) (unpublished) ("Congress has not abrogated the states' sovereign immunity under § 1983.").

Plaintiff argues that his claims against NCDPS under RLUIPA are not barred by sovereign immunity because North Carolina accepts some federal funding. (Docket Entry 17 at 4-5.) RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person" serves to further a compelling government interest and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. The Supreme Court has held that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under

RLUIPA because no statute expressly and unequivocally includes such a waiver." *Sossamon v. Texas*, 563 U.S. 277, 293 (2011). Also, "the Fourth Circuit has held that RLUIPA only authorizes injunctive relief against a state official, whether sued in his/her individual or official capacity." *Turner v. Clelland*, No. 1:15CV947, 2016 WL 6997500, at *15 (M.D.N.C. Nov. 30, 2016) (citation omitted) (unpublished).

Here, Plaintiff has also sued a state official, Defendant Brown (Chaplaincy Services Director), who has already filed an Answer to Plaintiff's Complaint in this action. (Ans. ¶ 6, Docket Entry 13.) Any relief under RLUIPA, if granted, could be directed to this individual. Thus, the RLUIPA claim against NCDPS is redundant and unnecessary as it would essentially be the same claim as that against Defendant Brown in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotations and citation omitted) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.").

Defendant Hooks also moves to have Plaintiff's claims dismissed against him. (Docket Entry 15 at 6-7.) Plaintiff alleges that Defendant Hooks is charged with the responsibility to make or delegate policy for NCPDS. (Compl. ¶ 4.) He also alleges that he has yet to remove NGE as a SRG group, and that he has yet to give NOI religious recognition. (*Id.* ¶ 18.) These allegations fail to state an actual cause of action attributable to Defendant Hooks, as Plaintiff makes no claim that Defendant Hooks was personally involved, nor took any action to injure or otherwise harm Plaintiff.

To the extent Plaintiff seeks to assert supervisory liability against Defendant Hooks as Secretary of NCDPS, that too fails. Defendant Hooks may not be held liable based upon a

theory of *respondeat superior,* because *respondeat superior* generally is inapplicable to § 1983 suits. *Iqbal,* 556 U.S. at 676; *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994).

Here, "Plaintiff fails to allege facts from which a court could reasonably infer that the conduct of which Plaintiff complains was widespread and presented a pervasive and unreasonable risk of constitutional injury to Plaintiff." *Griffith v. Solomon*, No. 1:15CV876, 2016 WL 7156553, at *3 (M.D.N.C. Dec. 7, 2016) (unpublished). At most, Plaintiff's claims are conclusory; thus, any supervisory liability claim would fail. *Bradley v. White*, No. 5:16-CV-196-FDW, 2017 WL 5137586, at *6 (W.D.N.C. Nov. 6, 2017) (unpublished) (Plaintiff "does not allege that Defendants . . . engaged in conduct that posed a pervasive and unreasonable risk of injury, that their response to this risk was deliberately indifferent, or that there was a causal link between the inaction and Plaintiff's injury.").

Lastly, Defendant Jackson moves for dismissal alleging that Plaintiff's claims against him fall outside the applicable statute of limitations for § 1983 claims. (Docket Entry 15 at 7-9.) "While affirmative defenses ordinarily cannot be raised on a motion to dismiss, a defendant

7

may properly raise an affirmative defense of statute of limitations through Rule 12(b)(6) when the facts supporting the defense plainly appear on the face of the Complaint." *Tunstall v. Perry*, No. 1:15CV226, 2018 WL 1320265, at *3 (M.D.N.C. Jan. 5, 2018) (unpublished). The statute of limitations in this case is three years. *See Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985) (holding that, in section 1983 actions, state statute of limitations for personal injury applies); *Reinbold v. Evers*, 187 F.3d 348, 359 n.10 (4th Cir. 1999) (stating that the personal injury statute of the state where the alleged violation occurred is the appropriate statute of limitations in a *Bivens* action); *Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year statute of limitations for personal injuries to section 1983 actions); N.C. Gen. Stat § 1-52 (establishing three-year statute of limitations for personal injury). A plaintiff's cause of action accrues, and the statute of limitations runs, from the date on which he "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995).

Here, Plaintiff alleges that Defendant Jackson was responsible for confirming "validations of prisoners." (Compl. ¶ 7.) He claims that his validation as a member of NGE was "requested" by Defendant Jackson who is alleged to have fabricated an interview with Plaintiff by falsely reporting that Plaintiff admitted to being a member of NGE. (*Id.* ¶ 8.) Plaintiff alleges this validation took place on March 18, 1998. (*Id.*) Plaintiff makes no further allegations regarding the conduct of Defendant Jackson. Thus, the alleged misconduct of Defendant Jackson took place in 1998 and Plaintiff knew or should have known that he had a potential claim at the time it occurred. *Nasim,* 64 F.3d at 955. Plaintiff's claim should have

8

been filed before March 2001. However, Plaintiff did not bring suit against Defendant Jackson until he filed this action in February 2019, nearly 21 years later. His claim against Defendant Jackson for a 1998 gang validation thus falls outside the applicable three-year statute of limitations. *See Miranda v. Cate*, No. C 11-3749 RS PR, 2012 WL 4903008, at *1 (N.D. Cal. Oct. 16, 2012) (unpublished) (claim filed 4 years after date of gang validation is barred by the statute of limitations).

Plaintiff argues that Defendant Jackson's claim is not barred by the statute of limitations due to the "continuing wrong" doctrine. (Docket Entry 17 at 7.) A continuing violation occurs when there is "an ongoing policy or pattern of violations rather than discrete acts." *Hartquist v. Emerson Elec. Co.*, No. 1:11CV1067, 2016 WL 1312028, at *7 (M.D.N.C. Mar. 31, 2016) (internal citation and quotations omitted) (unpublished). "[C]ontinual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." *Smith v. Noftle,* No. 1:13CV708, 2015 WL 3675740, at *6 (M.D.N.C. June 12, 2015) (internal citation and quotations omitted) (unpublished); *Hartquist;* 2016 WL 1312028, at *7. The Fourth Circuit explained:

> If the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed.

*Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991) (citation omitted). "If the continuing violation doctrine is implicated, the limitations period begins to run at the time of the last violation." *Hartquist*, 2016 WL 1312028, at *7.

Here, Plaintiff asserts one single act by Defendant Jackson in 1998 which he knew of when it happened and asserts no continuing acts by Defendant Jackson. Even if the Compliant is liberally construed such that Plaintiff's ongoing SRG designation is an injury attributable to Defendant Jackson, "the violations preceding the filing of the complaint by the full limitations period are foreclosed." *Raleigh*, 947 F.2d at 1167. Thus, the acts complained of in 1998, which clearly fall outside the three-year period, would be injuries that are foreclosed to him in the instant matter. Furthermore, the Court notes that Plaintiff alleges in this Compliant that Defendant Chris Rich denied Plaintiff's request to be removed from SRG in July 2018. (Compl. ¶ 13.) Defendant Rich has filed an Answer (*see* Docket Entry 13) and a 2018 injury would fall within the statute of limitations for this suit. As such, any purported harm from the SRG designation can be properly addressed against Defendant Rich or other parties remaining in this action. In sum, Plaintiff's argument against Defendant Jackson fails.

In conjunction with his opposition brief, Plaintiff simultaneously filed an Amended Complaint in which he attempts to "ensure a claim is stated." (Docket Entry 17 at 3; *see also* Am. Compl., Docket Entry 18.) Rule 15(a) of the Federal Rules of Civil Procedure allow a plaintiff to amend a complaint one time as a matter of course within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing

party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It further states that "[t]he court should freely give leave when justice so requires." *Id.*

In their Reply, Moving Defendants assert that the amended complaint fails to cure the deficiencies of the original Complaint.[3] (Docket Entry 19.) The undersigned agrees. The amended Complaint, which is largely consistent with the allegations in the original Complaint, still fail for the same reasons previously discussed herein. That is, Plaintiff's amended pleadings fail to state a claim upon which relief may be granted and/or are barred by the statute of limitations. Thus, Moving Defendants' motion to dismiss should be granted.[4]

III. **CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that Defendants North Carolina Department of Public Safety, Eric Hooks, and Wendell Jackson's Motion to Dismiss (Docket Entry 14) be **GRANTED**, and the claims against said Defendants be dismissed.

_____
Joe L. Webster
United States Magistrate Judge

February 7, 2020
Durham, North Carolina

---

[3] Plaintiff has filed a "Reply" to Moving Defendants' Reply. (*See* Docket Entry 20.) A party does not have a right to file a surreply; thus, the Court will not consider it. *DiPaulo v. Potter*, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010). In any event, Plaintiff's surreply is a rehashing of the arguments previously made by Plaintiff, none of which will alter the recommendation herein.

[4] Though not discussed herein, Moving Defendants' argument regarding the issue of whether Plaintiff has standing to bring suit as a member of NGE (which he claims he is not a member) also has merit. (*See* Docket Entry 15 at 6; Docket Entry 19 at 4.)

11